894 So.2d 325 (2005)
DENHAM SPRINGS ECONOMIC DEVELOPMENT DISTRICT
v.
ALL TAXPAYERS, PROPERTY OWNERS, et al.
No. 2004-C-1674.
Supreme Court of Louisiana.
February 4, 2005.
*326 Liskow & Lewis, Robert S. Angelico, Cheryl Mollere Kornick, New Orleans, and Kenneth Todd Wallace, counsel for appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Fred Lee Chevalier, Harry Simms Hardin, III, New Orleans, James Conner Percy, Baton Rouge, Michael Herbert, David Matthew Kerth, Rainer, Anding & McLindon, Robert R. Rainer, Harris and Pugh, L.L.C., Denham *327 Springs, Jay Jones Harris, counsel for respondents.
D. Blayne Honeycutt, New Orleans, counsel for amici curiae Denham Springs Chamber of Commerce, Livingston Parish Council, and Livingston Parish Tourist Commission.
John David Allen, counsel for amici curiae Denham Springs Downtown Merchants & . . .
Richard Allen Curry, Michael H. Rubin, Andrew Jackson Harrison, Jr., Baton Rouge, counsel for amicus curiae Fa-Kouri Construction, Inc.
Carmack Morgan Blackmon, Baton Rouge, counsel for amicus curiae Livingston Economic Development counsel.
John Paul LeBlanc, counsel for amicus curiae Louisiana Association of Business & Ind.
John Andrew Gallagher, Baton Rouge, counsel for amicus curiae Louisiana Municipal Association.
Richard David Bankston, Baton Rouge, counsel for amicus curiae P and R Enterprises Partnership.
Eric L. Pittman, Denham Springs, counsel for amicus curiae Sheriff Willie Graves for Livingston Parish.
Walter Richard House, Jr., amicus curiae counsel for Louisiana Department of Economic Development.
Joshua Simon Force, Timothy Benedict Francis, James Michael Garner, New Orleans, counsel for amicus curiae World Trade Center of New Orleans, Inc.
Gary J. Elkins, Jordan Barro Monsour, Richard Louis Traina, New Orleans, counsel for amicus curiae World Trade Center Taxing District.
Kenneth Michael Carter, Soren Erik Gisleson, Russ Michael Herman, Steven J. Lane, New Orleans, counsel for amicus curiae World Trade Center Development, LP.
Angela Whitaker Adolph, Stephanie Bienveni Laborde, Baton Rouge, counsel for amicus curiae Louisiana Marine and Motorcycle Trade.
TRAYLOR, J.
The issue presented in this case is whether a taxing authority may use dedicated funds, previously dedicated to a specified purpose by a vote of the people, for a purpose other than their dedicated use, to fund a new economic development project. After a review of the record and the applicable law, we find the court of appeal erred in affirming the trial court's judgment. Accordingly, for reasons set forth herein, we reverse the judgments of the lower courts.

FACTS AND PROCEDURAL HISTORY
The underlying facts of this case concern the funding structure of a proposed project known as the Bass Pro Project ("Project"). In 2003, the Denham Springs Economic Development District ("District") was created pursuant to La. R.S. 33:9038.2 to facilitate economic growth in the area. The District, which is composed of seventy-five (75) acres of vacant property, is contained within the City of Denham Springs in Livingston Parish. The Project envisions the creation of a twenty-seven acre retail outlet, including a restaurant, related infrastructures and public improvements, and the location of a Bass Pro Shops retail outlet.
The Project is to be funded through the issuance of revenue bonds secured by the pledge of local government sales tax increments in accordance with La. R.S. 33:9038.1 et seq. After payment of the revenue bonds in full, Bass Pro Shops *328 could have the option of purchasing the retail facility for a nominal fee.
In order to aid in the implementation of the Project, the District drafted a cooperative endeavor agreement ("Agreement") with the following parties participating: the District; the Parish of Livingston ("Parish"); the City of Denham Springs ("City"); the Law Enforcement District of the Parish of Livingston ("Law Enforcement"); the Livingston Parish School Board ("School Board"); Special Tax District No. 1 of the Parish of Livingston; the Denham Springs Economic Development Corporation; and the State of Louisiana through the Secretary of the Department of Revenue. The agreement provided that each party pledge to contribute sales tax increments toward funding the Project.
On March 25, 2004, the District filed a "Motion for Judgment," seeking validation of the bond proposal. Therein, the District alleged that it was created pursuant to La. R.S. 33:9038.2, as an economic development district authorized to collect the "sales tax increment[s]" used to secure the issuance of bonds for the financing of economic development projects. The District further alleged its intent to issue bonds amounting to approximately $50,000,000, to be used to fund the Project. The motion further provided that said bonds would be secured by the pledge of collected sales tax increments by the participating tax recipient entities listed above.
On April 8, 2004, A. Ponder Jones, a taxpayer, property owner and resident of Livingston Parish filed an answer, exceptions, and defenses to the suit, contending the proposed bond issuance was improper. Also on April 8, 2004, the School Board filed an answer requesting the trial court rule on the issue of whether the School Board could pledge sales and use tax revenues for the Project in light of La. Const. Art. VII, § 14 and whether the tax increment financing statute ("TIF") authorizes participation of school boards in "TIF" financing where school board revenues are "expressly dedicated to specific purposes."
After a hearing, the trial court rendered judgment declaring legal and valid: (1) the bonds; (2) the actions and proceedings taken and contemplated by the District in connection with the bond issuance; (3) the Act and its authorization of the Agreement; (4) the participation of the entities to the Agreements; (5) the contemplated transaction granting an option to Bass Pro Shops to purchase the Project for nominal consideration; (6) the purchase and contemplated lease of the twenty-seven acre tract; and (7) the means provided for payment of the bonds, including the pledge of sales tax revenues, lease and mortgage of the land. The trial court further declared in its judgment that all legal requirements concerning publication, notice, and receipt of the motion for judgment had been met and decreed the conclusiveness of the judgment in accordance with the Bond Validation Act, and that the judgment constituted a permanent injunction against further proceedings on the issues decided.
The Court of Appeal, First Circuit, affirmed the trial court's judgment.[1] Defendant filed an emergency writ in this Court, which was granted to review the correctness of the lower courts' rulings.[2]

*329 DISCUSSION
La. R.S. 33:9038.4(A) authorizes the District to issue bonds to fund economic development projects. The District's authority is set forth in detail in the statute and provides:
A local governmental subdivision or entity authorized pursuant to this Part may issue revenue bonds payable from revenues generated by economic development projects with a pledge and dedication of up to the full amount of sales tax increments annually to be used as a guaranty of any shortfall, or at the option of the local governmental subdivision or tax recipient entity, payable directly from an irrevocable pledge and dedication of up to the full amount of sales tax increments, in an amount to be determined by the local governmental subdivision or tax recipient entity, to finance or refinance all or any part of an economic development project as described in this Section and R.S. 33:9038.6.
The proposed fifty million dollar bonds will be secured by money derived from the pledged proceeds of the tax recipient entities and the statute allows the District and the tax recipient entities to dedicate "up to the full amount of sales tax increments."[3] Sales tax increments are defined in La. R.S. 33:9038.4(A)(2) as:
that portion of the designated sales tax . . . collected each year on the sale at retail, the use, the lease or rental, the consumption and storage for use or consumption of tangible personal property, and on sales of services, all as defined in R.S. 47:301 et seq., or any other appropriate provision or provisions of law as amended, and may include hotel occupancy taxes, occupancy taxes, or similar taxes, or any combination of such taxes, levied upon the use or occupancy of hotel rooms if so designated by the local governmental subdivision or tax recipient entity, from taxpayers located within an economic development district which exceeds the designated sales tax revenues and hotel occupancy taxes, occupancy taxes, or similar taxes so designated that were collected in the year immediately prior to the year in which the district was established.
The District is currently undeveloped land and is located within the Parish of Livingston, City of Denham Springs. Currently, the only tax generated within the District is property tax. As there are no retail outlets on the land, no sales tax is being generated at this time. Thus, under the formula in La. R.S. 33:9038.4(A)(2), 72.2% of all sales tax generated within the District from this Project will be considered "sales tax increments" and will be dedicated to pay the bonds pursuant to the Agreement.[4]
The testimony presented at the hearing reveals that the District's economy is depressed. The District contends that the Project will attract additional businesses and promote economic growth in the area and that this financial incentive will lure new business to the area. However, the record reflects that the actual amount of revenues proposed to be received is not yet concrete. Moreover, no analysis was presented regarding the impact of this project on similar local business, who would not be afforded the financing assistance this project is being *330 provided. We recognize that economic development is a role which has been increasingly assumed by the government. Undeniably, job creation and retention are important to economic welfare. While we remain cognizant of the importance of promoting business in the area, the issue to be resolved in this case is not the propriety of the future revenues of this Project but whether the taxing recipients may ignore prior voter dedications of tax revenues and divert funds to this Project.

CONSTITUTIONAL ARGUMENTS
Defendant, Ponder Jones, suggests that the TIF statute, insomuch as it allows the dedication of public funds to a private endeavor, violates La. Const. Art. 7, § 14.[5] Although defendant presents this argument, it is proper for this Court to first determine whether the issues may be disposed of on non-constitutional grounds. Ring v. State, DOTD, XXXX-XXXX (La.1/14/03), 835 So.2d 423, 426 ("Courts should avoid constitutional rulings when the case can be disposed of on non-constitutional grounds."). Constitutional issues should be determined only when necessary to resolve a conflict. Id., (". . . [C]ourts should refrain from reaching or determining the constitutionality of legislation unless, in the context of a particular case, the resolution of the constitutional issue is essential to the decision of the case or controversy."); Louisiana Associated General Contractors, Inc. v. New Orleans Aviation Board, 97-0752 (La.10/31/97), 701 So.2d 130, 132 ("A court should not reach or determine constitutional issues unless, in the context of a particular case, the resolution of such issues is necessary to decide the case."). Thus, the Court will first address defendant's primary argument which requires an analysis of whether the statute allows dedicated funds to be used to fund this project.

STATUTORY ANALYSIS
Questions of law, such as the proper interpretation of a statute, are reviewed by this court under the de novo standard of review. Cleco Evangeline v. Louisiana Tax Com'n, 2001-2162 (La.4/3/02), 813 So.2d 351, 353. After our review, we "render judgment on the record, without deference to the legal conclusions of the tribunals below. This court is the ultimate arbiter of the meaning of the laws of this state." Id.
"Legislation is the solemn expression of legislative will, and therefore, the interpretation of a law involves primarily the search for the legislature's intent." La.Code Civ. art. 2; Detillier v. Kenner Regional Medical Center, XXXX-XXXX (La.7/6/04), 877 So.2d 100, 103; Grant v. Grace, 2003-2021 (La.4/14/04), 870 So.2d 1011, 1014; Sultana Corp. v. Jewelers Mut. Ins. Co., XXXX-XXXX (La.12/3/03), 860 So.2d 1112, 1115. The interpretation of a statute starts with the language of the statute itself. Grant, 2003-2021, 870 So.2d at 1014. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the *331 intent of the legislature. La.Code Civ. art. 9; Detillier, XXXX-XXXX, 877 So.2d at 103.

VOTER APPROVED TAXES
Local governments possess the right to impose taxes only when the power is granted to them by the state constitution or by statute. Radiofone, Inc. v. City of New Orleans, 93-0962 (La.1/14/94), 630 So.2d 694. Article VI, section 29 of the Louisiana Constitution authorizes the governing authority of any local governmental subdivision or school board to levy and collect a tax on goods, if approved by a majority of the electors voting thereon in an election held for that purpose. In addition to the constitutional provision, the legislature has directed the taxing authority, in La. R.S. 33:2721.6(D)(5), that the "proceeds of the tax shall be dedicated solely for the purposes approved by the electorate." Furthermore, La. R.S. 33:2714 requires "the ordinance imposing said tax, and any amendments thereto, shall specify the purpose or purposes for which said tax is imposed. The revenues derived from said tax shall be dedicated and used solely for said purpose." [emphasis added]. Thus, in determining the intent of the electors for the dedicated use of the funds, we must review the ordinances and propositions approved in the various elections.

Livingston Parish School Board Tax
La. R.S. 33:2721.6 authorizes the Livingston Parish School Board to impose a special tax if approved by the electors. Subsection (D)(5) of the statute provides as follows:
The proceeds of the tax shall be dedicated solely for the purposes approved by the electorate, including the funding of the proceeds of such tax into bonds in the manner provided by Subpart F of Part III of Chapter 4 of Title 39 of the Louisiana Revised Statutes of 1950, as amended, which funding may be submitted to the voters in the same proposition in which the tax was submitted. [emphasis added]
On July 21, 1987 and May 3, 1990, the School Board approved two separate proposition approving additional sales taxes totaling two and one-half percent (2 1/2%). The proposition of May 3, 1990, amended and reenacted the ordinance passed on July 21, 1987[6], and provided the funds derived to be used as follows:
The revenues derived from said sales and use taxes to be dedicated and used (after paying reasonable costs and expenses of administering the taxes) to be used [sic] eighty percent (80%) to maintain salaries and wages of teachers and other employees of the public school system and twenty percent (20%) to pay the cost of utility services of the public school system, as provided for in the proposition approving the levy and collection of said tax in the special election of July 18, 1987.
The proposition was approved by the voters of the School District. Thus, under La. R.S. 33:2721.6(D)(5) and La. R.S. 33:2714, the only permitted use of the special school board sales tax was that set forth in the proposition. Hence, the revenues could only be used to maintain salaries and wages of teachers and other employees of the public school system and to pay the cost of utility services of the public school system. No other use was permitted in the proposition presented to the voters.

*332 Livingston Parish Law Enforcement District Tax

La. R.S. 33:2740.7 authorizes the Livingston Parish Law Enforcement District to levy a special tax if approved by the electors. The statute specifically provides that "the proceeds of such tax shall be used for operating and maintaining the parish prison and providing for the payment of other costs of law enforcement in the parish." [emphasis added].
On March 10, 1992, a special election was called regarding the proposition to allow the Law Enforcement District of Livingston Parish to present to the voters a proposition which would impose a sales tax of one-half of one percent (.5%). The proposition provided that revenues derived from said sales and use taxes:
"to be dedicated and used for the purpose of supplementing current revenues for the operation of the Livingston Parish Sheriff's office in the District, said tax of approved, to be in lieu of a similar one-half of one percent (1/2%) sales and use tax levied and collected in law enforcement Sub-District A of the Parish of Livingston."
The proposition was submitted to and approved by the electorate of Livingston Parish during a special election on March 10, 1992, and certified by the Secretary of State on March 25, 1992. The only permitted purpose set forth in the proposition was for supplementing revenues for the operation of the Sheriff's Office, no other permissible use was presented to the voters.

City of Denham Springs Tax
On July 27, 1992, an ordinance was adopted by the Denham Springs City Council enacting a one and one-half percent (1.5%) sales tax. The ordinance specifically provides for revenues derived from the tax to be used as follows:
Revenues derived from said sales and use taxes to be dedicated and used (after paying reasonable costs and expenses of administering the taxes) to be used (sic) to fund the construction and acquisition of essential improvements to the City's sewerage collection and treatment system.
We note that the ordinance provides that only .5% of the tax is specifically dedicated to the use of improvement to the City's sewerage system. However, the remaining 1.0% of the tax reverts to the general fund and is not specifically dedicated to an enumerated purpose. Thus, 1% of the revenues is not restricted to any enumerated purpose and may be used for other purposes such as economic development.

Livingston Parish Tax
On November 8, 2001, the Livingston Parish Council adopted an ordinance for street and drainage improvement. On January 19, 2002, the City of Denham Springs presented a proposition to the voters and outlined, as required by La. R.S. 33:2721.6(D)(5), the specific use of the tax revenues. The proposition sought to renew a seven (7) year one percent (1%) sales tax and provides, in pertinent part:
[w]ith the proceeds of the Tax (after paying the reasonable and necessary expenses of collecting and administering the Tax), to be dedicated and used for constructing, improving and maintaining roads and bridges and related road drainage throughout the Parish.
The voters approved the proposition, dedicating the funds to the improvement of roads, drainage and bridges throughout the City. The language of the proposition does not permit any other use of the tax revenues other than the use set forth therein.

*333 DENHAM SPRINGS VOTERS HAVE DEDICATED THE TAXES TO A SPECIFIC PURPOSE

Based upon the above elections and ordinances, we find the following taxes are specifically dedicated to the respective purpose presented to the voters:

 Livingston Parish 1% for street improvement;
 City of Denham Springs .5% for sewerage improvement;
 Law Enforcement District .5% for the operation of the sheriff's office;
 School Board 2.5% for salaries, utilities and facility improvement.

The people of Livingston Parish voted to allow the imposition of additional taxes as required by this state's constitution and by statute. When the propositions were placed on the ballots, the people agreed to accept the burden of additional taxes based on the promise that the tax proceeds "shall be dedicated and used for said" purpose. The said purpose outlined in each of the propositions presented to the voters included uses such as teacher salaries, school facility improvement, sewerage improvement, road and drainage improvement, maintaining the parish prison and providing for the payment of other costs of law enforcement in the parish. The propositions all contained the phraseology "dedicated and used" immediately preceding the intended use of the sales tax proceeds as required by La. R.S. 33:2714. Thus, we conclude that the sales taxes for the respective tax recipient entities were specifically dedicated only for those uses set forth on the ballots presented to the voters. No other use of these sales taxes were specified during the elections and the voters did not grant permission for any other use.

LA. R.S. 33:9038.4(A)(5) PROTECTS THE WILL OF THE VOTERS
The legislature granted the District the authority to enter into cooperative endeavor agreements with other local taxing authorities. This was done primarily to assist businesses in securing revenues which could be pledged to repay bonds issued to fund economic development projects. Recognizing that taxing authorities may have previously pledged proceeds from taxes to other ventures, the legislature set forth a safeguard to ensure tax proceeds are not diverted to other purposes. La. R.S. 33:9038.4(A)(5), provides:
Pledged sales tax increments may include all incremental increases in sales taxes, and hotel occupancy taxes, occupancy taxes or similar taxes, or any combination of such taxes, so designated in an economic development district of all participating tax recipient entities, provided that such revenues may be used for such purpose, subject to dedication by other law or by proposition approved by electors voting in an election for such purpose called by the taxing authority levying the tax, unless such use is permitted and upon a prior determination by the local governmental subdivision or other taxing authority that the baseline revenue collection is sufficient to satisfy such dedications and other statutory charges, and provided that all tax recipient entities affected, other than the state of Louisiana, enter into an intergovernmental agreement with the issuer authorizing and dedicating the inclusion of such incremental increase in sales taxes.
According to defendant, if the taxes are pledged to other dedicated uses, sales tax increments are likewise prohibited from being diverted. Conversely, the District submits that the statute allows the tax *334 recipient entity to override the vote of the people if they are able to certify that the baseline revenue collection is sufficient to satisfy such dedications. The District maintains that the legislature's inclusion of the phrase following the word "unless" in La. R.S. 33:9038.4(A)(5) creates an exception to the general rule prohibiting the use of dedicated funds. The court of appeal adopted the District's reasoning and found that La. R.S. 33:9038.4(A)(5) specifically allows "all incremental increases in sales taxes" to be pledged under the statute. The court concluded that if it was to accept any other interpretation of the statute, designated taxes could never be used for other purposes and it would render the sales tax collected by virtually every local governmental entity wholly dedicated, leaving no sales tax available to pledge toward TIF projects. We find this interpretation of the statute incorrect and conflicts with other statutory provisions, the Louisiana Constitution and the right of the people of Louisiana to be informed when voting for the imposition of taxes.[7]
La. R.S. 33:9038.4(A)(5) provides that before a tax recipient entity may pledge sales tax increments, the use must first be permitted and the tax cannot be previously dedicated to another purpose. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La.Civ.Code art. 9; La.R.S. 1:4. However, when a law is susceptible of different meanings, "it must be interpreted as having the meaning that best conforms to the purpose of the law."[8] La.Civ.Code art. 10. The meaning and intent of a law is determined by consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Hayden v. Richland Parish School Bd., 554 So.2d 164, 167 (La.App. 2 Cir.1989), writ denied, 559 So.2d 124 (La.1990).
We find that the statute, as written, prohibits dedicated taxes from being used for purposes other than their dedicated purpose. La. R.S. 33:9038.4(A)(1) gives the District the power to issue bonds, however, La. R.S. 33:9038.4(A)(5) restricts the use of previously dedicated funds. The provisions of La. R.S. 33:9038.4(A)(5) clearly indicate that sales tax increments can only be used where such use is permitted by the electorate. This interpretation is consistent with La. Const. Art. VI, section 29 which allows the imposition of additional taxes only "if approved by a majority of the electors voting thereon in an election held for that purpose." This conclusion is further harmonized by the language of the individual ordinances which set forth the specific dedication and La. R.S. 33:2714 which states that the revenues derived from the "tax shall be dedicated and used solely for said purpose."
The argument advanced by the District is that the additional funds generated by the new project will be used to pay the bonds and that the taxing authorities will not be deprived of funds. However, the District fails to recognize that the tax recipient entities' authority to collect tax proceeds is predicated on the fact that the *335 electors of Livingston Parish voted to allow additional taxes and were told that the taxes would be dedicated for a specific purpose. Thus, but for voter approval of the additional tax, no tax could be collected by the tax recipient entities to fund this project.
The TIF statute, enacted in 2002, is a chief tool used not only in Louisiana but in other states to encourage business development in economically depressed areas. The statute, when used properly, promotes economic development and utilizes the money generated from the project to serve as a funding source. In the instant case, the District sought the involvement of several tax recipient entities who could only impose taxes based on the authority granted by the people. The statute contains specific language which recognizes that tax increments may be used if permitted. Clearly, the voters were never made aware of other permitted uses for the funds and did not agree to other uses. Should the taxing entities seek to redirect the revenue derived from the tax proceeds, they are required to re-submit a proposition to the voters of the Parish for approval. Thus, we find La. R.S. 33:9038.4(A)(5) does not allow taxing entities to pledge or re-direct funds, previously dedicated to other uses absent voter approval.

CONCLUSION
Every citizen of the state shall have the right to vote subject to the exceptions set forth in La. Const. Art. 1, § 10. This fundamental right of a citizen is paramount to our democratic process and attempts to circumvent that process must be curtailed. At various times, the citizens of Denham Springs voted and agreed to impose special taxes. At each juncture, a proposition was presented to the voters for approval. Each time, the proposition set forth the purpose for which the additional tax would be used. The act of presenting a proposition to the voters and the voters' acceptance of same constitutes a covenant which should be respected and upheld. The language of the propositions did not specify uses other than those set forth therein. The taxes were dedicated to specific uses and we find no ambiguity in the language of La. R.S. 33:9038.4. We do not suggest that economic development is not a valid governmental undertaking. However, guided by the law, we find that once citizens vote for a tax dedicated to one purpose, the tax cannot be used for a purpose other than that approved by the citizens. Any alteration of a prior dedication should also be by vote of the people.
We have previously stated that rights and understanding that can reasonably be ascribed to the voting population must control. Radiofone, Inc. v. City of New Orleans, 93-0962 (La.1/14/94) 630 So.2d 694. We reaffirm that principle today and find that La. R.S. 33:9038.4 does not allow a local tax recipient entity to re-direct previously dedicated funds absent voter approval.
In conclusion, our finding that previously dedicated funds cannot be used to fund the bonds abrogates the need to address this issue of whether the TIF statute violates the constitution. We find that the taxing authorities cannot unilaterally, without the acquiescence of the voters, use otherwise dedicated public funds to finance this project. Hence, we find the statute unambiguous and pretermit addressing the issue of whether La. R.S. 33:9022, et seq. is constitutional. In addition, the arguments regarding whether the ultimate transfer of land to Bass Pro Shops is constitutional is likewise pretermitted.

*336 DECREE
For the reasons assigned, the rulings of the lower courts are reversed.
JOHNSON and VICTORY, JJ., concur.
NOTES
[1] Denham Springs Economic Development Dist. v. All Taxpayers, Property Owners and Citizens of the Denham Springs Economic Development Dist., et al, XXXX-XXXX (La.App. 1 Cir. 6/4/04), 885 So.2d 1153.
[2] Denham Springs Economic Development Dist. v. All Taxpayers, Property Owners and Citizens of the Denham Springs Economic Development Dist. et al, XXXX-XXXX (La.9/24/04), 882 So.2d 1129.
[3] During the hearing on the Motion for Judgment held in the trial court, testimony was elicited from Dr. James Richardson, a Professor of Economics at Louisiana State University. Dr. Richardson testified that the taxing authorities have agreed to pledge 72.2% of the new sales tax increment and will retain 27.3% of the sales tax increment.
[4] See footnote 3, supra.
[5] In briefs to this Court and during oral argument, counsel for defendant stated that Mr. Jones did not take the position that the TIF statute was unconstitutional. Instead, she emphasized that the uses of dedicated funds, if used to fund this project, would constitute a constitutional violation of La. Const. Art. 7, § 14. Moreover, we note that the proper procedural requirements for constitutional challenges were not satisfied in this case. See Vallo v. Gayle Oil Co., 94-1238 (La.11/30/94), 646 So.2d 859, 865 and State v. Schoening, XXXX-XXXX (La.10/17/00), 770 So.2d 762.
[6] The proposition of 1987 permitted the net proceeds of the tax to be used as follows:

[e]ighty percent (80%) to maintain salaries and wages of teachers and other employees of the public school system and twenty percent (20%) to pay the cost of utility services of the public school system.
[7] See footnote 5. Where funds are not dedicated to a specific use, revenues may be pledged.
[8] During oral argument in this Court, counsel for the District admits that it's interpretation of the statute is "creative." The District submits that the language of the statute does not prohibit it from proceeding as proposed.