964 So.2d 1042 (2007)
GULF EXPLORER, LLC
v.
CLAYTON WILLIAMS ENERGY, INC.
No. 2006 CA 1949.
Court of Appeal of Louisiana, First Circuit.
June 8, 2007.
John M. Robin, Covington, Counsel for Plaintiff/Appellant, Gulf Explorer, LLC.
Samuel E. Masur, Christopher B. Bailey, Lafayette, David M. Ellison, Jr., Baton Rouge, Counsel for Defendant/Appellee, Clayton Williams Energy, Inc.
Before: CARTER, C.J., WHIPPLE and McDONALD, JJ.
CARTER, C.J.

FACTUAL AND PROCEDURAL HISTORY
Defendant, Clayton Williams Energy, Inc. (Clayton Williams), was the operator *1043 of an oil and gas producing unit in Plaquemines Parish, Louisiana, known as the 8300 RA SUA, Raphael Pass Field. The unit was formed by order of the state Commissioner of Conservation effective June 18, 2002. Plaintiff, Gulf Explorer, LLC (Gulf), owned certain mineral leases within the geographical confines of the unit.
In September 2002, Clayton Williams sent notice to Gulf of its intention to drill SL 16901 No. 1 as the unit well for 8300 RA SUA Unit and offered Gulf the opportunity to participate in the risk and expense of the well. Gulf failed to respond to the notice; thus, pursuant to LSA-R.S. 30:10, it was deemed to have chosen not to participate.
Clayton Williams completed the SL 16901 No. 1 Well in January 2003 at a cost of $4,922,808.60. Clayton Williams paid the entire cost; Gulf did not bear any of the risk or expense incurred in drilling the well. In September 2003, Gulf released all of its leasehold interests in the 8300 RA SUA Unit.
In August 2004, Clayton Williams commenced operations to plug and abandon the SL 16901 No. 1 Well because it no longer produced oil and gas in sufficient quantities. The revenues derived from the SL 16901 No. 1 Well totaled $3,618,211.06. Accordingly, the well was approximately $1,304,597.00 short of reaching payout.
In October 2003, Gulf filed suit seeking a declaratory judgment stating that Gulf's royalty and overriding royalty owners were entitled to their share of production from the 8300 RA SUA Unit attributable to the duration of its leases. Gulf alleged that Clayton Williams should either forward the pertinent production proceeds directly to the royalty and overriding royalty owners or pay them to Gulf so that Gulf could disburse the funds accordingly. Clayton Williams filed a reconventional demand seeking a declaration that, pursuant to LSA-R.S. 30:10, it was entitled to "recover out of production from the 8300 RA SUA Unit well allocable to the tract belonging to Gulf, the nonparticipating owner, the tract's allocated share of the actual reasonable expenditures incurred in drilling, testing, completing, equipping, and operating the unit well, including a charge for supervision, together with a risk charge."
After stipulating to the facts and resolving all ancillary issues, the parties submitted to the trial court the sole legal question of whether Clayton Williams bore an obligation to pay Gulf's former royalty and overriding royalty owners any amounts from the production derived from the 8300 RA SUA Unit. Concluding that it did not, the trial court rendered judgment in favor of Clayton Williams. From this judgment, Gulf appeals.

DISCUSSION
Gulf contends that LSA-R.S. 30:10 does not authorize Clayton Williams to recoup well costs and any risk charge by retaining funds from that portion of the production attributable to Gulf's royalty and overriding royalty owners. Conversely, Clayton Williams argues that LSA-R.S. 30:10 permits an operator like itself, which risks its capital in drilling a unit well, to recover from the production attributable to tracts leased by owners that have chosen not to participate in the risk and expense of drilling (herein, Gulf) the share of costs for the non-participating owner's tracts plus a risk charge. It maintains that this necessarily includes the production attributable to Gulf's royalty and overriding royalty owners. While Clayton Williams concedes Gulf's royalty and overriding royalty owners are due their royalty on production from the SL 16901 No. 1 Well, it contends that Gulf, and not Clayton Williams, owes *1044 these royalties because Clayton Williams has no contractual relationship with or obligation to Gulf's royalty and overriding royalty owners.
The interpretation of a statute, such as LSA-R.S. 30:10, begins with the language of the statute itself. Denham Springs Economic Development Dist. v. All Taxpayers, Property Owners, 04-1674 (La.2/4/05), 894 So.2d 325, 330. The words of a law must be given their generally prevailing meaning. LSA-C.C. art. 11; see LSA-R.S. 1:3. When a law is clear and unambiguous, the law shall be applied as written and no further interpretation made. LSA-C.C. art. 9.
In pertinent part, LSA-R.S. 30:10 provides as follows:
A. When two or more separately owned tracts of land are embraced within a drilling unit which has been established by the commissioner as provided in R.S. 30:9(B), the owners may validly agree to pool their interests and to develop their lands as a drilling unit.
(1) Where the owners have not agreed to pool their interests, the commissioner shall require them to do so and to develop their lands as a drilling unit, if he finds it to be necessary to prevent waste or to avoid drilling unnecessary wells.
. . .
(2) In the event pooling is required, the cost of development and operation of the pooled unit chargeable to the owners therein shall be determined and recovered as provided herein.
(a)(i) Any owner drilling or intending to drill a unit well, including a substitute unit well, on any drilling unit heretofore or hereafter created by the commissioner, may, by certified mail, return receipt requested, notify all other owners in the unit of the drilling or the intent to drill and give each owner an opportunity to elect to participate in the risk and expense of such well. . . .
. . .
(ii) Such election to participate must be exercised by mailing written notice thereof by certified mail, return receipt requested, to the owner drilling or intending to drill the unit well within thirty days after receipt of the initial notice. Failure to give timely written notice of the election to participate shall be deemed to be an election not to participate.
. . .
(b)(i) Should a notified owner elect not to participate in the risk and expense of the unit well[,] . . . the owner drilling same shall, in addition to any other available legal remedies to enforce collection of such expenses, be entitled to own and recover out of production from such unit well allocable to the tract belonging to the nonparticipating owner such tract's allocated share of the actual reasonable expenditures incurred in drilling, testing, completing, equipping, and operating the unit well, including a charge for supervision, together with a risk charge, which risk charge shall be one hundred percent of such tract's allocated share of the cost of drilling, testing, and completing the unit well.
. . .
(e) The provisions of Paragraph 2(b) above with respect to the risk charge shall not apply to any unleased interest not subject to an oil, gas, and mineral lease. Notwithstanding the provisions of Paragraph 2(b) the royalty owner and overriding royalty owner shall receive that portion of production due to them *1045 under the terms of the contract creating the royalty.
. . .
(g) Nothing contained herein shall have the effect of enlarging, displacing, varying, altering, or in any way whatsoever modifying or changing the rights and obligations of the parties thereto under any contract between or among owners having a tract or tracts in the unit.
Section A(2)(b)(i) of the statute clearly provides that an operator is "entitled to . . . recover out of production from . . . the tract belonging to the nonparticipating owner such tract's allocated share of . . . expenditures." (Emphasis added.) "Tract" is defined as a "continuous expanse of land." Webster's New World Dictionary 1416 (3d ed. 1988). Accordingly, Clayton Williams is entitled to recover its costs out of the production attributable to Gulf's tract or "continuous expanse of land" and not merely the amounts attributable to that tract minus the royalties and overriding royalties Gulf is obligated to pay pursuant to its contracts with third parties. See Willis v. International Oil and Gas Corp., 541 So.2d 332, 336 (La. App. 2 Cir.1989) (holding that the unit operator was entitled to retain 100 percent of the proceeds from the production of the unit well until such time as the expenses of drilling, completing and operating the well were recovered).
Further, under LSA-R.S. 30:10A(2)(e), a lessor must look to his lessee for payment of a royalty under the terms of the contract creating the royalty. Under the lease agreements, Gulf, the lessee, is obligated to pay its lessors their royalties and overriding royalties. Clayton Williams has no contractual relationship with Gulf's lessors; under the facts presented herein, Clayton Williams has no obligation to pay Gulf's royalty and overriding royalty owners before it legally recoups its expenses from production pursuant to LSA-R.S. 30:10 A(2)(b)(i).[1]
Accordingly, we find that the trial court correctly interpreted the law in concluding that Clayton Williams was entitled to recover Gulf's share of the reasonable expenditures incurred in drilling the SL 16901 No. 1 Well out of the production attributable to Gulf's tracts. Thus, we hold that the trial court properly ruled that Clayton Williams bore neither a contractual nor a legal obligation to pay Gulf's former royalty and overriding royalty owners any amounts due from Gulf under the lease agreements.

CONCLUSION
For all of the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to Gulf Explorer, LLC.
AFFIRMED.
NOTES
[1] We note that since the well was approximately $1,304,597.00 short of reaching payout, Clayton Williams is seeking to recoup only its fair share of actual well costs. Whether Clayton Williams would be entitled to a risk charge under different factual circumstances is not at issue in this case.