9 So.3d 792 (2009)
LOCAL NUMBER 1442, PROFESSIONAL FIREFIGHTER'S ASSOCIATION, et al.
v.
City of CROWLEY.
No. 2008-C-1392.
Supreme Court of Louisiana.
May 5, 2009.
Rehearing Denied May 29, 2009.
*794 Broussard, Halcomb & Vizzier, Daniel Elmo Broussard, Jr., Alexandria, for applicant.
Law Offices of Thomas K. Regan, Thomas Keith Regan, Crowley, for respondent.
KIMBALL, Chief Justice.
The voters of the City of Crowley ("the City") approved a sales tax proposition authorizing the City to levy and collect a sales tax of one-half of one percent whose proceeds are to be used for the purpose of City employees' salary increase with 33 1/3% to all fire personnel. Once an election is held wherein citizens approve a tax dedicated to one purpose, the tax proceeds cannot be used for any other purpose. The voters directed that the proceeds of the sales tax are to be used for salary increases for fire personnel. However, the City is using some of the proceeds for increases in pay that are not true salary increases, and for costs that are related to salary increases, but are obligations of the City rather than true salary increases. We find, therefore, the City is improperly using the tax proceeds when it uses them for promotional increases, overtime pay, holiday pay, and costs related to the increases, such as the City's contribution to the retirement system, FICA taxes, and the City's cost of insurance for workers' compensation and unemployment compensation.

*795 Facts and Procedural History
On November 28, 1981, a special tax election was held in the City of Crowley wherein the voters approved a sales tax proposition authorizing the City to levy and collect a tax of one-half of one percent "upon the sale at retail, the use, the lease or rental, the consumption for storage, or use, or consumption of tangible personal property and on sales of services in the City...." The voters also chose that the proceeds of the additional tax be dedicated and "used for the purpose of City employees [sic] salary increase to be equally divided with ... 33 1/3% per cent to all Fire personnel...."[1] These tax propositions were renewed by the voters of the City in 1991 and 2001. It is undisputed that the sales tax proceeds have been used to fund increases above the base pay for fire personnel, including an across-the-board raise, promotional increases, and longevity increases, and costs related to the increases, including the City's contributions to the Firefighters' Retirement System, the City's FICA taxes, workers' compensation insurance premiums, and payment of unemployment compensation taxes. Additionally, the City funds overtime and holiday pay from the sales tax proceeds.
On April 2, 2001, plaintiffs, Local Number 1442 of the Professional Firefighter's Association and several firefighters employed by the City, filed a petition for declaratory judgment asserting that the City is using the tax proceeds for purposes other than those approved by the voters. In their petition, plaintiffs requested a declaration that the City must use the tax proceeds only for salary increases for fire personnel and for no other purposes. Following a bench trial, the trial court dismissed the petition for declaratory judgment at plaintiffs' cost. In oral reasons for judgment, the trial court stated that the funds generated from the 1981 tax initiative are being used in accordance with the law and the intent of the voters. The court further stated the trial testimony revealed that the firefighters' base salaries are being paid out of the City's general fund, and not out of the tax proceeds. Accordingly, the trial court denied the petition for declaratory judgment.
The court of appeal affirmed the judgment of the trial court. Local Number 1442, Professional Firefighter's Ass'n v. City of Crowley, 08-110 (La.App. 3 Cir. 5/28/08), 983 So.2d 1031 (unpub'd opinion). The court of appeal found the testimony presented established that the firefighters are receiving their full base pay and any raises not covered by the sales tax proceeds from the general fund. It concluded there was no error in the trial court's conclusion that the proceeds of the sales tax are being used as contemplated by the sales tax initiative. One judge concurred in part and dissented in part, stating that he would reverse the trial court's judgment to the extent it allows the City to use the funds generated from the sales tax for overtime pay, holiday pay, worker's compensation insurance premiums, the City's retirement fund obligations, and the City's share of the cost of insurance or unemployment contributions. In his opinion, *796 the City has expanded the language of the proposition to include the ancillary costs associated with increases in the firefighters' salaries.
We granted certiorari to consider the correctness of the court of appeal's interpretation of the phrase "used for the purpose of ... salary increase" as employed in the City's tax proposition and applied to fire personnel. Local Number 1442, Professional Firefighter's Ass'n v. City of Crowley, 08-1392 (La.10/10/08), 993 So.2d 1270.

Discussion
Local governments possess the right to impose taxes only when such power has been granted to them by the state constitution or by statute. Denham Springs Economic Development Dist. v. All Taxpayers, 04-1674, p. 7 (La.2/4/05), 894 So.2d 325, 331, Radiofone, Inc. v. City of New Orleans, 93-0962, p. 2 (La.1/14/94), 630 So.2d 694, 696. Article VI, § 29 of the Louisiana Constitution grants the governing authority of any local governmental subdivision the authority to "levy and collect a tax upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption, of tangible personal property and on sales of services as defined by law, if approved by a majority of the electors voting thereon in an election held for that purpose." In enacting these sales taxes, the legislature has directed that the proceeds of the tax be dedicated and used solely for the purposes approved by the voters. See La. R.S. 33:2714, La. R.S. 33:2721.6(D)(5). Thus, once an election is held wherein citizens approve a tax dedicated to one purpose, the tax proceeds cannot be used for any other purpose. Denham Springs Economic Development Dist., 04-1674 at p. 14, 894 So.2d at 335.
In the instant case, the sales tax proposition approved by the voters provided that the proceeds and avails of the tax, after the payment of reasonable and necessary expenses for the purpose of collection and administering the tax, shall be dedicated and used under one of two possible propositions. The proposition chosen by the voters provided that the sales tax be used for the purpose of City employees' "salary increase," with 33 1/3 percent going to all fire personnel.[2] No other use was permitted in the proposition submitted and approved by the voters. Consequently, the tax proceeds at issue can only be used for salary increases for fire personnel.
Plaintiffs contend the City has been using the tax proceeds for things other than "salary increases" as envisioned by the electorate. In order to determine whether the City's use of the sales tax proceeds is appropriate, we must determine what the voters intended when they approved the proposition dedicating the tax revenues to City employees' salary increases with a portion going to fire personnel. In making this determination, the controlling factor is the understanding that *797 can reasonably be ascribed to the voting population as a whole. Denham Springs Economic Development Dist., 04-1674 at p. 15, 894 So.2d at 335. The common understanding of a salary increase is additional or take-home pay for performing the same job duties. When the voting public is asked to tax itself to give a salary increase to fire personnel, it is reasonable to believe that the voters intended to give the firefighters additional compensation, or salary, to provide for themselves and their families. The intention of the voters was not necessarily purely altruistic, for it can be assumed the voters passed the tax and dedicated a portion of its proceeds to salary increases for fire personnel to attract and retain qualified firefighters to protect themselves, their property, and their community.
In the case at bar, it is undisputed that any payments made to or on behalf of a fire employee above his base pay at the time he was hired or, if he was hired before the effective date of the tax, at the time the sales tax went into effect are paid from the sales tax proceeds. The proceeds of the sales tax are thus being used to fund longevity salary increases, an across-the-board pay raise, promotional increases required by La. R.S. 33:1992, anticipated overtime and holiday pay, and costs associated with the increases, such as the City's contributions to the Firefighters' Retirement System, the City's FICA taxes, workers' compensation insurance premiums, and payment of unemployment compensation taxes. Plaintiffs agree that the use of the sales tax revenues to fund the 2% longevity salary increase mandated by La. R.S. 33:1992 and the pay raise given to all firefighters on April 15, 2002, is proper. Consequently, these uses of the proceeds are not before us.
The trial testimony of the Crowley City Clerk revealed that an employee's base, or beginning, salary or the salary he was earning when the sales tax went into effect is paid from the City's general fund. Any increases above that base amount, along with associated costs and overtime and holiday pay, are funded by the sales tax proceeds. If there are not enough proceeds to cover the entire amount, the leftover amount is paid from the City's general fund. The City Clerk confirmed that prior to the passage of the sales tax, when a firefighter was promoted to a driver, or a driver promoted to a captain, the statutory promotional increase in pay was funded from the general fund. After the passage of the tax, all promotional increases are funded from the sales tax proceeds. The Clerk also confirmed that she would define a salary increase as including all costs of an increase in salary to a particular employee, such as the City's contribution to the retirement system, and the City's cost of insurance for workers' compensation and unemployment compensation.
Plaintiffs contend that the City's use of the sales tax proceeds to fund promotional increases for each individual firefighter who is promoted, rather than an increase for the entire class of fire personnel at each rank, is impermissible. We agree that the funding of statutorily-required promotional increases with the sales tax proceeds does not comport with the intent of the voters who dedicated those proceeds to salary increases to fire personnel. La. R.S. 33:1992 sets forth required minimum monthly salaries for firemen, and a percentage increase for each promotion in rank.[3] When a firefighter *798 is promoted to a higher rank or position, he is entitled to the minimum salary required to be paid for that rank or position. The new salary is payment for the performance of a different job, not a salary increase for the former rank or position held by the firefighter. Although the individual firefighter does receive additional take-home pay, he is entitled to the additional compensation because he was promoted and is performing a new job; he has not merely received a salary increase. In our view, payment of statutorily-mandated promotional increases for each individual at the time he is promoted is not a salary increase for fire personnel as intended by the voters when they approved the tax at issue. In contrast, an increase in the monthly compensation for each firefighter at each rank or position, for example all lieutenants or all captains, would be a salary increase for fire personnel that could be funded by the sales tax proceeds.
Similarly, the City's practice of funding the overtime and holiday pay of firefighters from the sales tax revenues is impermissible when the intent of the voters in passing the tax is considered. While overtime pay is part of a firefighter's compensation, it is not part of his salary. The statute governing a firefighter's maximum hours, La. R.S. 33:1994, recognizes that his overtime compensation is governed by the federal Fair Labor Standards Act. In its contingent provisions, however, the statute states that overtime compensation shall be calculated using a firefighter's "average monthly salary," *799 which is obviously distinguished from overtime pay. Because it is not part of a firefighter's salary, we cannot say that the voters intended that overtime compensation be funded from the sales tax proceeds dedicated to salary increases for fire personnel.
Likewise, the statute governing holiday pay, La. R.S. 33:1999, sets forth a computation using the firefighter's "average monthly salary," which, again, must be distinct from holiday pay. Additionally, the statute provides that in lieu of additional compensation, the City may grant fire personnel time off from work for which the additional compensation would be due and payable to the firefighter. Holiday pay may therefore be "paid" with time off rather than money. We do not believe the voters intended for holiday pay to be funded from the sales tax proceeds dedicated to salary increases.
In addition to funding promotional increases, overtime pay and holiday pay from the sales tax proceeds, the City also pays costs related to increases in firefighters' compensation, such as the City's contribution to the retirement system, FICA taxes, and the City's cost of insurance for workers' compensation and unemployment compensation, from the sales tax revenues. These costs are not part of a firefighter's salary, but are obligations of the City. As such, they cannot be said to be what the voters had in mind when they agreed to tax themselves to give a salary increase to fire personnel. Payment of these costs, while necessary, do not increase the salary of a firefighter. If these ancillary or related costs were intended to be funded by the proceeds of the sales tax, the tax proposition could easily have included them. For example, the proposition could have provided that the sales tax be used for the purpose of City employees' salary increase and related costs. In the absence of such wording, we cannot find the voters intended that the sales tax revenues be used for costs related to salary increases when the tax initiative clearly indicates an intent to provide only for salary increases to fire personnel.
We recognize that the City Clerk and the auditors of the City opined that the City is using the tax proceeds in accordance with the proposition and generally accepted principles. However, the test to determine whether the proceeds are correctly being used is what the voters intended when they approved the proposition dedicating the tax revenues to City employees' salary increases with a portion going to fire personnel. We find the City's use of the tax proceeds to fund promotional increases, overtime pay, holiday pay, and costs related to increases in firefighters' compensation, such as the City's contribution to the retirement system, FICA taxes, and the City's cost of insurance for workers' compensation and unemployment compensation, was not approved by the voters. Consequently, the tax revenues cannot be used for these purposes.
Plaintiffs also complain that the City is impermissibly retaining a portion of the sales tax proceeds dedicated to the firefighters by maintaining a surplus of funds in their account. The evidence indicates that the City has maintained a balance of varying amounts since the tax was enacted. However, for practical reasons, we see no problems with the City maintaining a reasonable surplus or balance in the account representing the firefighters' share of the sales tax proceeds. While the proceeds are dedicated to salary increases for fire personnel and must be used for this purpose, it would be unworkable to prohibit the carrying of a reasonable balance in the account at issue.
*800 When the voting public adopts a tax and dedicates its proceeds to a specified use, those tax revenues cannot be used for any other purpose. The voters directed that the proceeds of the sales tax are to be used for salary increases for fire personnel. However, the City is using some of the proceeds for increases in pay that are not true salary increases, and for costs that are related to salary increases, but are obligations of the City rather than true salary increases. We find, therefore, the City is improperly using the tax proceeds when it uses them for promotional increases, overtime pay, holiday pay, and costs related to the increases. Consequently, the lower courts erred in finding that the tax proceeds were being used in accordance with the intent of the proposition selected by the voters. The court of appeal was in error when it affirmed the trial court's judgment dismissing plaintiffs' petition for declaratory judgment.

Decree
For the reasons assigned, judgment is rendered in favor of plaintiffs and against the City on plaintiffs' petition for declaratory judgment. Accordingly, it is ordered, adjudged and decreed that there be judgment declaring that the City must use the 33 1/3% of the sales tax proceeds at issue only for salary increases for fire personnel as interpreted herein and for no other purpose. The judgment of the court of appeal affirming the trial court's judgment dismissing plaintiffs' petition for declaratory judgment is reversed.
Reversed.
WEIMER, J., dissents and assigns reasons.
GUIDRY, J., concurs in part, dissents in part, and assigns reasons.
WEIMER, J., dissenting.
I respectfully dissent from the majority opinion that reverses the rulings of the lower courts. For the following reasons, I find this is a proper case for the application of the doctrine of contemporaneous administrative construction. This court has noted that:
[A]n administrative construction cannot have weight where it is contrary to or inconsistent with the statute. However, where the statute [or other legislative enactment] is ambiguous ... a long settled contemporaneous construction by those charged with administering the statute is given substantial and often decisive weight in its interpretation. This is especially so where ... the administrative construction has consistently been followed since adoption of the statute over twenty years ago.
International Paper, Inc. v. Bridges, 07-1151, pp. 15-16 (La.1/16/08), 972 So.2d 1121, 1131-1132, quoting Traigle v. PPG Industries, Inc., 332 So.2d 777 (La.1976).
On March 3, 2006, the parties filed a "Joint Stipulation of Facts" which they stated was in "support of their respective positions." The parties submitted the depositions of City Clerk Judy Istre, one taken in 2003 and the other in 2006; a deposition taken in 2003 of Steven Lambouse, a CPA (now retired) who had been the auditor of the City of Crowley; and a 2006 deposition of Charles Abshire, a CPA who was the current auditor of the City of Crowley.
Abshire's deposition testimony revealed that he was present at Istre's 2006 deposition, and that he had reviewed the deposition transcript of the former auditor, Lambouse. During the audits Abshire conducted of the Fund, he found no problems with the City's withdrawals from the Fund generated as a result of the tax proposition at issue. He stated that if *801 there had been problems, the City would have been notified by letter and a copy sent to the legislative auditor. Although the legislative auditor has received copies of all audits, the City has not been cited by the legislative auditor for any problems involving this Fund.
Abshire verified that in performing the audit, his firm read the sales tax call and determined that the taxes collected were used for the purposes stated therein. The Fund was used for salary increases, i.e., for increased wages and "direct costs" related to the increases.
In light of the above testimony and the lack of any evidence presented by the plaintiff firefighters to refute that testimony, I conclude the application of the doctrine of contemporaneous administrative construction is appropriate. First, the sales tax provision in question in this case is ambiguous"City employees [sic] salary increase" can be read (as the firefighters suggest) to be limited to actual dollars added to their gross pay, or can be read (as verified by the auditor) to allow the Fund to be used for direct costs of those increases. This tax initiative was voted on in 1981, and renewed in 1991 and 2001, when it was ultimately challenged by the plaintiffs. Throughout this time, the City, as the administrating body, has interpreted the measure as allowing the deductions that have been made. The City's interpretation has been approved by the auditor each year for the past 27 years.
Although the parties did not cite or discuss the doctrine of contemporaneous administrative construction, the majority opinion delves into what was intended when the tax was enacted. It was the City that drafted the tax proposition, submitted the tax proposition to the voters, and implemented the proposition once approved by the voters. The City's implementation was based on its contemporaneous construction of the proposition. This construction spanned more than two decades without being challenged. When considered in conjunction with the auditor's approval, the City's construction is persuasive, especially in light of the fact the firefighters submitted no evidence whatsoever to rebut the City's and the auditor's construction of the proposition. In an attempt to determine intent, the doctrine of contemporaneous administrative construction is considered the best evidence and indication of what was meant when the voters enacted the provision.
Nothing in the record indicates the firefighters have proven the City's intent to exclude the direct costs of the increases in salaries. The firefighters have failed to introduce any evidence to establish the auditor and the City Clerk were wrong in their reading of the sales tax proposal or that the City Clerk's and the auditor's reading of the sales tax proposal deviated from the intent of the voters. Consequently, I disagree with the majority's reversal of the decisions of the lower courts.
GUIDRY, Justice, concurs in part, dissents in part, and assigns reasons.
I concur in the majority opinion's holding that the City of Crowley is improperly using certain sales tax proceeds for statutorily-mandated promotional increases and any ancillary expenses or costs associated with that unauthorized use of the sales tax fund.[1] However, I respectfully dissent in part from the majority opinion's holding that the City is improperly using sales tax proceeds to cover corresponding, discrete increases in overtime pay, holiday pay, and *802 ancillary expenses and costs incurred as a result of properly authorized salary increases. The majority reasons that the sales tax proposition could have been worded more specifically to include such ancillary or associated costs but was not, and, further, that such costs, some of which are the legal obligation of the employer, should be paid out of the City's general fund, and not out of the new tax revenue, because they are not included in an employee's "salary." However, if the test is, as the majority opinion asserts, "the understanding that can reasonably be ascribed to the voting population as a whole," ante, pp. 796-97, then such ancillary costs of the proposed salary increases would logically be included as payable from the additional sales taxes imposed upon the voters and not from the City's general fund. According to my reading, the approved proposition does not indicate in any manner whatsoever that the salary increasesto be paid for solely from the new sales taxwould result in additional and unfunded financial liability to the City's general fund. Therefore, my view is that the voting public would surely expect, in authorizing additional sales taxes to pay for salary increases for certain City employees, that such new revenue would also be the source for paying the ancillary costs incurred as a result of those authorized salary increases and not to place any additional costs upon the City's general fund. Essentially, the majority opinion holds that the voting public would have understood that the ancillary costs associated with the additional take-home pay for certain City employees would be paid from the City's general fund and not the new tax revenue source it had voted to impose upon itself to fund those salary increases, but I can discern no support for such a conclusion.
NOTES
[1] Specifically, the "1/3 PETITION," as it was identified on the proposition, provided:

Shall the said sales and use tax be used for the purpose of City employees [sic] salary increase to be equally divided with 33 1/3% per cent to all City employees not otherwise covered herein, 33 1/3% per cent to all Fire personnel, and 33 1/3% per cent to all police personnel, all being full[-] time employees of the City to be paid from the proceeds of annual receipts of the revenues generated from the said one-half (½) of one (1%) per cent sales tax as projected on an annual basis and provided for in the annual budget; police personnel salary increase to be paid across the board equally?
[2] The alternate proposition, which was not approved by a majority of the voters, provided:

Shall the sales and use tax be used for the purpose of providing a single fifteen (15%) per cent pay raise for all City employees based on their salaries for fiscal year 1981, which said pay raise shall be not less than $100 per month and not more than $150 per month to all full[-]time City employees and with a portion to be budgeted to fund the unfunded liability or the merger of the City of Crowley Police Pension Fund with the Municipal Police Employees Retirement System, with the said plan to be approved by the City of Crowley for the purchase of the unfunded liability standing in the City of Crowley Police Pension Fund either in a lump sum payment or a 20 or 30 year payoff plan and the remainder shall thereafter be used for salaries?
[3] La. R.S. 33:1992 provides in part:

A. The minimum monthly salaries of firemen in municipalities having a population of twelve thousand or more and of all parish and fire protection district paid firemen, including salaries payable out of the avails of any special tax provided by the Constitution of Louisiana for increasing the pay of firemen, shall be in accordance with the following schedule, and such salaries shall be paid semi-monthly not later than the fifth and twentieth day of each calendar month:
(1) A fireman shall receive a minimum monthly salary of four hundred dollars per month.
(2) Engineers shall receive a minimum monthly salary of not less than ten percent above that of a fireman.
(3) Lieutenants shall receive a minimum monthly salary of not less than fifteen percent above that of a fireman.
(4) Captains shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman.
(5) Battalion chiefs and district chiefs shall receive a minimum monthly salary of not less than forty percent above that of a fireman.
(6) Assistant chiefs and deputy chiefs shall receive a minimum monthly salary of not less than fifty percent above that of a fireman.
(7) A mechanic or assistant mechanic, or any other person doing this type of work for the fire department, shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman.
(8) A superintendent of fire alarm system, or any other person doing this type of work for the fire department, shall receive a minimum monthly salary of not less than forty percent above that of a fireman.
(9) A fire alarm operator or dispatcher, or any other person doing this type of work for the fire department, shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman.
(10) A fire inspector shall receive a minimum monthly salary of not less than twenty-five percent above that of a fireman.
(11) For the city of Shreveport only, the provisions of R.S. 33:1992(9) shall apply only to present employees of the city of Shreveport Fire Department and shall not be applicable to any person employed by the city of Shreveport Fire Department after September 1, 1986.
(12) The provisions of R.S. 33:1992(A)(9) shall not be applicable to any person employed by the city of Morgan City.
B. From and after the first day of August, 1962, each member of the fire department who has had three years continuous service shall receive an increase in salary of two percent and shall thereafter receive an increase in salary of two percent for each year of additional service up to and including twenty years. Both the base pay and accrued longevity shall be used in computing such longevity pay.
[1] These ancillary expenses or costs include the corresponding increases in contributions to the Firefighters' Retirement System, FICA taxes, workers' compensation insurance premiums, and unemployment compensation taxes.